Thank you, Judge. Even though this has been going on for a year, it never strikes me the oddness of doing these sort of arguments over video. May it please the Court. My name is Brian Ellickson, representing Lorraine Benear, appellant in this Social Security disability case. Ms. Benear filed for Title II disability insurance benefits, predicated by her paying into that system over her working career, with lifetime taxable earnings in excess of half a million was denied at application at a hearing, and that ALJ denial is the subject of the hearing here today. The focus of my presentation today will be on Ms. Benear's treating physicians. Three of Ms. Benear's treating physicians offered an opinion as to her work capacity. Two of those three offered specific opinions as to her functional limitations. The Judge gave little weight, varying degrees of weight, but all little weight, to all three opinions, and in doing so, offered some rationales, but not rationales that would be specific, legitimate, and based on substantial evidence. And I've forgotten to mention that I would like to reserve one minute for rebuttal, if I may. Thank you, Judge. The treating primary care doctor, Dr. Hayashi, offered two opinions as to Ms. Benear's specific functional limitations. The Judge offered five rationales for discounting that. They are not specific, legitimate, and based on substantial evidence. The first was a blanket assertion that it was somehow inconsistent with the medical evidence. No citation was given at that point of the decision. If the Court were inclined to look to other parts of the decision for a more thorough explanation, what the Court would see is that the recitation of the medical evidence is somewhat selective in nature. It tends to focus on examination findings that would indicate non-disability and not give a complete picture of the record. As an example, at ER44, page 11 of the Administrative Law Judge's decision, the first full paragraph, there's a citation to a clinical examination record at Sunrose Anesthesia, December 2015, and some normal findings recited in that paragraph. What is not recited are a number of abnormal findings, and please forgive me for the extensive list, but not listed by the Administrative Law Judge are severe pain on cervical spine flexion, severe pain on adduction of the right and left upper extremities, severe pain on flexion and extension of the thoracic spine, severe bilateral SI joint tenderness, severe lumbar tender points, severe paraspinous tenderness at two levels of the lumbar spine, severe pain with flexion and extension of the lumbar spine. That's an example, but it's a representative one of the recitation of facts in this decision, which tends to be somewhat selective in nature and does not give an overall picture of the medical evidence. Of course, we asked the Administrative Law Judge to identify and resolve conflicts in the medical record. That is what the ALJ is tasked to do, but what it appears the ALJ has done here is not identify and resolve conflicts, but in essence, to pretend that no conflicts exist. If you can help me a little bit, what's the primary or single primary set of primary complaints that strikes me that she is mostly saying that she's got mental and psychological difficulties that prevent her from working rather than physical difficulties that prevent her from working? Obviously, she has physical difficulties, I get that, but what is it that's the core of why she says she cannot work? Well, the core of the physician's judge is actually the physical complaints. The three physicians that have opined to, the three treating physicians that have opined to limitations, have opined to physical limitations in a very specific functional way. They have limited her in terms of her sitting and standing and walking to less than an eight-hour day, Judge, and that is treating physician Hayashi and treating neurologist Hagevic, who we'll discuss momentarily. There certainly are mental health issues here, but there is not a treating physician who has endorsed those limitations, but on the physical side, there are multiple that have. DLJ, sort of in an extension of her discussion of the medical evidence, says that Dr. Hayashi appears or may have based his opinion on Ms. Beneer's subjective complaints. Now, there's no citation to evidence for that. By extension, the inference is that Dr. Hayashi has somehow abandoned his medical judgment, and there needs to be evidence presented for that. This court in Leicester, affirmed in the last couple of years in Popa v. Berryhill, has indicated that the ALJ may not assume that a doctor is somehow abandoning his medical judgment. The court in Leicester said we can't assume that doctors lie in order to obtain benefits for their subjective complaints. It certainly doesn't rise to a specific reason, as the standard requires. Let me ask you this, if I may. She testified that she doesn't drive. The ALJ says she does drive. Where's the ALJ getting that? I mean, because that's directly in contradiction to what she says in her testimony. It is, Judge, and the ALJ has gotten that from a function report, if my recollection is correct. At hearing, Ms. Bonner amended her onset date of disability to a hospitalization in January of 2014. Prior, when she filed her application, she alleged an earlier onset date corresponding to when she stopped working. Medical evidence after that time certainly offered a glimpse into increasingly significant limitations. So, the judge, perhaps inadvertently, grabbed a piece of evidence from a period of time that Ms. Bonner acknowledged to the agency that she was not, in fact, disabled. And that contradiction may have been a contradiction had the onset date of disability stayed the same. But Ms. Bonner acknowledged to the agency that the evidence did not support disability at that time. She alleged that it supported disability at a later time. The reason I'm asking this, although the ALJ doesn't quite put two and two together to make four, it suggests that the ALJ is telling us that, you know, she's telling us about the degree of disability that's not true. Because she says I can't drive. She concludes that she can. I might need a little more help about that than you were just able to give me. I'm not sure that the ALJ is talking about evidence during which she conceded she could drive. Is that right? I mean, I'm still working on this question. Yes, Judge. And again, and pardon me for flipping through pages, but at the time of the hearing, certainly Ms. Bonner was not driving. I think that's testimony that is truthful, certainly at the time of the hearing. I don't recall the hearing transcript indicating that the ALJ asked Ms. Bonner about the length of time that she had gone without driving. And my recollection is that the function report that was cited as evidence of driving predated the onset date here. And so she's grabbing essentially information that's no longer relevant by her admission, by her forthright admission to the agency, that the evidence would not have supported disability before the amended onset date. Does that answer your question, Judge? I guess that does. I may need to look back a little bit more in terms of where the evidence comes from that the ALJ is relying on, but we've got an inconsistency here. And if the ALJ is concluding based on earlier evidence as to which she's not claiming disability that she can drive, and now she says she can't, and we don't get an adverse credibility finding or some sort of an exaggeration of symptoms finding directly from the ALJ, I guess I've got a problem with what the ALJ did. Help me a little bit with respect to the cruises. I read her testimony. Yes, Judge. Do we know anything more about these? One was, I guess, a cruise to Hawaii and one was a cruise to Alaska. Do we know anything more than what she says in the record about these cruises? We don't know much more in terms of the detail given to her physicians. It's pretty sparse. We do know that the judge found contradiction between the physician opinions and those cruises. That seems somewhat curious given the nature of the ALJ. I mean, one can sit and stand and lie down and recline at one's leisure. The ALJ seemed to find that a limitation to sitting, standing, and walking up to four hours out of eight is inconsistent with the cruise, where an individual could presumably lay down the entire day if they so chose or needed to. And so that inconsistency struck me as not based on any evidence, certainly not any cited evidence, but certainly no logic as well. I see that I'm down to about a minute. Unless the time. Okay, why don't we hear from the government and you'll get a chance to respond. Ms. Kenney? Hi, good afternoon, Your Honors. I'm Jennifer Kenney on behalf of Social Security. The key issue here is whether substantial evidence supports the ALJ's finding. And I wanted to go ahead and address right off the bat Judge Fletcher's concern about the driving. And I wanted to point out a couple of pieces of evidence that I hope will answer that question. So driving was one potential inconsistency in her testimony. She initially said she could drive in a functional report, but then later said, no, she can't drive. But there is evidence that she did drive in the record during the adjudicatory period. On October 15, 2014, her neurologist, Dr. Higovic, explained that there were no recurrent seizures, there was normal EEG, and there were no objections to driving. And that's at ER 667. Now, wait a minute, no objections to driving is different from saying that she can drive? Yes, Your Honor, I have one more citation for you. Just as another example, these are ones I just tried to pull up really quickly. The following year in August 2015, there's a reference by her drove to the session. She told him she didn't believe she'd be able to participate in physical therapy because of her severe pain. But the patient did drive herself to her initial therapy session, and her parents left her at home alone while they traveled out of town. And so that's at ER 647. So that is just one example I was able to find quickly where she was driving. Okay, thank you. I'd like to go ahead and address the treating physician opinions as well. In finding claimant not disabled, the ALJ relied on the opinions and findings of six physicians, three consultative examiners and three state agency reviewing physicians. The ALJ also considered, among other things, that except for two brief periods when claimant abruptly stopped her medications, clinical findings throughout the record were generally unremarkable. The ALJ also considered that claimant's statements about symptoms were inconsistent with the record. I'd like to go directly to claimant's assertion that the ALJ did not have specific and legitimate reasons to reject Dr. Hayashi's and Dr. Hagevic's opinions. Both of those opinions were on checkbox forms. They didn't provide references to objective evidence. They didn't provide any explanation for the extreme limitations they assessed. And I don't believe it was four hours of sitting and standing. I believe both doctors said that she couldn't sit, stand or walk for more than 20 minutes at a time. She would miss more than six days a month of work. And notably, with respect to the travel, Dr. Hayashi's opinion is dated right after he saw her and she said that she was doing great and that she was about to go on a cruise or about to go travel. So, that reasonably undermined the suggestion that she would be so limited as to be unable to stand or walk for even 20 minutes. Yes, on a cruise... Why is that? I guess you're about to get to that because I don't have a lot of experience taking cruises, but my understanding is that it doesn't require a great deal of exertion, does it? Certainly. So, the travel in and of itself is more than just sitting on the deck. She lives in Arizona. She needs to get to a port, which means she needs to get in a vehicle, be driven or drive to the airport. She has to go through security lines, through the airport, board onto the airplane and then sit for a few hours on the airplane and then get to the cruise ship where she then boards the cruise ship. And then her activities there also undermine some of the mental limitations she's alleged. But physically, just the idea to do all of that when she's claiming she's essentially bedridden, spending most of the day, the majority of the day in bed and being able to drive to the airport, go through the airport, get on a plane, get on a cruise and then do all of that on the return back is... It may not be the only interpretation of this evidence, but it was a rational one. And that's enough. But in the absence of any... I mean, we don't have any evidence about what sort of accommodations she did or didn't have on the airplane. I guess I'm just having trouble seeing how you get from... I suppose that's one supposition you could have about what it would be like to travel. But given that we don't really know and the ALJ really didn't know, how you can infer from the fact that a person was able to find a way to do that, that they would therefore be able to work at a job. It just seems like it doesn't quite match up. Well, the ALJ did ask her or her attorney elicited this information at the hearing, what accommodations she needed in traveling. And the only thing that she described were a wheelchair to get around at the airport and a scooter when she was on the cruise ship. She said she attended shows and sat to the side so she wouldn't have to be around people as much. And then she launched on the deck. But the only accommodations she described were mobility from getting from point A to point B. So the ALJ asked about that. She didn't describe it. So that was a moment if she had genuine difficulty with a two-week travel like this multiple times, when she's alleging intractable pain and fatigue, that would be the moment for her to provide that information and she did it. And so I think it was reasonable. Like I said, maybe not the only interpretation, but a reasonable one for the ALJ to conclude. Okay. Can I ask you going back? Oh, I'm sorry. No, no, please, please, Judge Miller, go ahead. You started out by noting that this was a checkbox form. What do you make of our decision in Treviso that there we said that that's not by itself a reason to reject it? What relevance do you think the nature of the report from Dr. Hayashi has to the assessment of that report? So it's not just the format. It's not just that it was on a checkbox form because if the ALJ had, I'm sorry, if the doctor had explained the reasons for the limitations, that would be a different story. This case is more like Ford v. Saul, where there's a checkbox form, the doctor checks what the limitations are, they're quite extreme, and then doesn't provide any basis for that. Here, there's nothing to explain the reasons or the assessment that Dr. Hayashi made in that, not just the format of the checkbox form, but the fact that there's no explanation, there's no citation to objective evidence. And then when you go and look at Dr. Hayashi's report, all three of them show that she was well-appearing, alert and oriented, well-groomed, and ambulatory. There's nothing in there to suggest that she would have such extreme limitations as those assessed on the form. And so that's the problem with the checkbox form, not just that it's on a piece of paper where the doctor checks boxes, but the lack of explanation. Yeah, I have trouble with the checkbox form in the following senses. You're focusing, as I understand you would, on both the October 2014 and the October 2018 form, where the question is, is it medically necessary for the patient to alternate between sitting, standing, or walking? Yes, every one to 20 minutes. In the middle of March 16, he says NA, not applicable. I'm not sure what that means. I've always viewed that checkbox as a little bit, and I've seen these before, it tends to mean you can't just keep the person sitting for a long time. She's got to move around a little bit. Now, I'm not sure whether to say that if she's going to go on a cruise, she can't be in a car for an hour or an airplane for two hours or whatever it is. That's a one-time event, or maybe once every two weeks event, one going and one coming back. It's not every day. So I'm not sure how starkly inconsistent the checkbox is with the activity of going on the cruise. Could you help me with that? Well, as I mentioned, it's one of the pieces evidence that the ALJ considered, and it was a rational interpretation, not the only one. The fact that she's going to her doctor saying, I need this form filled out for my disability claim. Can you please say that I'm disabled? And then, by the way, I'm doing great, and I'm going to go take a two-week cruise. And so then he fills out this report and checks all boxes indicating extreme limitations. So it's that context too. It's kind of the whole record that I think makes the ALJ's conclusion reasonable here. Okay. Any further questions from the bench? Okay. Thank you. And Mr. Elickson, you saved some time. Thank you, Judge. The supposition that because a physician fills out a form for his or her patient, that somehow medical judgment is left at the door without affirmative evidence to indicate that is exactly what this court criticized in Lester. That we may not assume, or the ALJ may not assume, that physicians are regularly untruthful simply in order to help their patients. They don't check medical judgment out the door. I've got a question, though, is about these forms. I'm looking at all three of them that Dr. Hayashi filled out. In the October 14 and in the March 16 form, when we get to question five about limitations, less than occasionally, the doctor checks zero to 20% for everything. Then in the October 18, the more recent one, he does not check zero to 20% for everything. He differentiates, as I well understood he should, between use of the right hand and the left hand. She's got a prior stroke, which apparently does limit the motion. So all of a sudden he's actually being differentiating, saying that use of the right hand, continuous, it's okay. Use of the left hand, zero to 20%. And then he says that she can use the right and the left foot, 21 to 33. The fact that he's differentiating in the most recent report suggests, and this is now a point in favor of the government, suggests that when he filled out the other two, he was just kind of blowing through it and not paying much attention. I'm not necessarily sure that's the case, Judge. I understand the thought process behind it, but you know, an individual's condition waxes and wanes over time. I don't think that it's fair to say that the earlier form, or the 2016 form, was breezed through. You know, that doctor looked at, for example, the resting limit, the need for rest, and said, on this occasion, I don't think that applies. So an individual's condition may wax and wane over time, but it does not necessarily indicate that they're somehow breezing through the form or not giving it their attention, Judge. I see I'm well over time and if the panel has any other questions, I'm happy to answer them. Okay, any further questions from the panel?
judges: W. Fletcher, Miller, Hunsaker